Good morning, Your Honors. I came a long way before the petitioner in this matter, and I thought maybe I was going to get a little vacation, so I skipped over the case. Your Honor, we're here to talk today about the cumulative effect of the trial errors, and there are three trial errors that were brought before the district court in the habeas petition. The first one being the most serious, which was the videotaped testimony, which was clearly a violation of Miranda and the Fifth Amendment right to self-incrimination. It was so found by the California Court of Appeals, and in this particular case, the Court of Appeals followed the Chapman v. California standard of review and deemed it to be harmless error, beyond a reasonable doubt. However, given that it is one of numerous trial errors, I believe then the petitioner has asserted today that the cumulative effect of those, if it's reviewed under the Brecht and AEDPA standards, would indicate that it was not harmless beyond a reasonable doubt. In the Court of Appeals, Fry conceded that he told the same thing to Jackson and Brown, and there was no way to keep Jackson and Brown out, so they said it was harmless. That seems to me to be a reasonable finding. How does that concession by your client in the Court of Appeals, that it's harmless and therefore no harm, no foul, all of a sudden escalate into something that's cumulative? I mean, if you start with zero, nothing cumulates, does it? I don't understand that argument. Well, I think what's important to note here is that this was videotaped. I'm sorry. I can't hear you. This was a videotaped confession. Oh, clearly it was wrong. I don't know what police officer in the world would have done something like this, but that isn't the issue. The issue is that he conceded that the very same information got to two witnesses which could come in, and the Court of Appeals said therefore it's harmless under Chapman. Well, that's not my reading of what the Court of Appeals indicated in its decision. What it said was that it was harmless because there was all this other evidence. They didn't say that it was harmless because he had told the same thing. It was harmless because of the huge amount of other evidence that could be not specifically relating to that videotape. And what's important about the videotape is that it definitively shows the petitioner on tape to the jury speaking where the petitioner has a right not to take the stand at trial and put himself before the jury. And here what the people did was got the petitioner in front of the jury erroneously and with grave prejudice to the petitioner. And the Court clearly held, the California Court of Appeals clearly held that it was wrong. And so how could the Court of Appeals then find that there was harmless error in putting a videotape? So you're arguing the Court of Appeals in California was wrong in that decision that it was harmless? Correct. And under the AEDPA standard, the district court and this Court could find that it was clearly a — Why is that an objectively unreasonable finding? I think that seems to be our standard on habeas as well as — in other words, I think there was a time when we could assume on federal habeas we could take an independent look on harmlessness. But now we have to accord some deference to the state court finding of harmlessness. How do you think that plays out in this case? Well, I'm not sure that that is what this court has to look at. I'm — when you read the Brecht case and then you read the case that this court — from this court, the Thomas case, the 2001 case that discusses cumulative errors in light of the AEDPA and Brecht. And Brecht, remember, is a pre-AEDPA Supreme Court case that doesn't really have the benefit of that statute, which indicates what the standard of review is. When you look at those and you look at the Thomas case and what Thomas talks about is that what this court looks at is whether the trial error resulted in actual prejudice. And it's the habeas petitioner's burden to do so, to make that showing. But once he makes that showing, then that showing demonstrates that the state court's finding that the error was harmless beyond a reasonable doubt, which is the Chapman versus California standard, was outside the realm of plausible, credible outcomes and therefore resulted from an unreasonable application of Chapman at the state court level. And what — so in answer to your question, I don't think that you necessarily need to look at that aspect. I think that you need to look at it in conjunction with the AEDPA and what Thomas talks about. Is that an answer? Roberts. My point really is that what the district court failed to do, and I think it was really very overbroad in its conduct of its discussion on the report and recommendation, what the district court failed to do was to look at this cumulative effect of all of these errors. And in particular on the Jaffe post-ruse statements that the California Court of Appeals clearly said were prejudicial in that there was additional information discovered after those post-ruse statements were made and there were additional witnesses discovered that wouldn't have ever been discovered had that conduct not been undertaken by Jaffe and the police officers. And what the district court did was they did this overbroad Strickland analysis and found that there wasn't any prejudice. Well, I would submit that there's actual prejudice and that the California Court of Appeals was very clear that there was actual prejudice. I suppose the argument would be, and your adversary is going to make this argument, I'm sure, was that he told Jaffe that he did the murder before the chicanery started and, therefore, it was untainted. What's your response to that? That is, an actual confession came in before the chicanery, which was overwhelming evidence. What would be your response to that? My response to that is, why did the prosecution need to put on all of this other evidence that was then clearly deemed to be error in the California Court of Appeals? And why did they need to put the post-ruse statements on? As they said, it was just merely icing on the cake. Why did they need to put it there? They had, as you say, the pre-Jaffe ruse, for lack of a better terminology, confession of how he murdered and got rid of the body. That was all enough, certainly. And then my other point would be, if you look at the finding of the post-ruse prejudice that came in, along with this videotape confession, if you will, or discussion, along with this evidence clearly irrelevantly determined to be irrelevant at the California Court of Appeals because of how Fry and the victim were met in jail, which indicated some sort of prior illegal conduct, all of that in conjunction with each other indicates that had this adversely affected the petitioner's ability to have a fair and impartial trial. Okay? I'll leave the rest to you. Sure. Thank you. Good morning, Your Honors. California Deputy Attorney General Adrian Denault, on behalf of Respondent. The individual errors in this case that occurred at Mr. Fry's state court trial do not warrant federal habeas corpus relief. The lack of an argument or analysis regarding the individual errors is seemingly a tacit acknowledgement by Mr. Fry that no individual error would warrant a grant of habeas relief in this case. It can be said that Mr. Fry has put all of his eggs into the cumulative error argument, and that, however, is not going to warrant federal habeas relief in this case. I suppose what the argument really is is that maybe one of these can be harmless, but if you get two or three that you're going off on harmless, maybe they add up to harmless. For example, the first one, the same information gets to the jury, but not in the words with the defendant testifying. So it's harmless because the same information got in, but I think what your adversary is arguing is that you could have two or three harmless, but you put them all together, they become harmful. What's your response to that? Your Honor, that's correct. In some cases, that may be the case, that you add up a few errors that in themselves are harmless, and there is a harmful error, but not in this case. In this case, Mr. Fry did concede that his statements on the videotape were statements that he had previously made to Mr. Brown and Jackson, and that concession does go a long way. And the fact that the California court did find that that error was harmless, we can take one more step back and show that the deference that's supposed to be accorded, the state court opinion, has not been challenged. Well, it's been challenged, but it hasn't been overcome, I guess is the proper way of saying it. And that deference, the court of appeal in California did look at these matters cumulatively to the extent that they looked at the totality of the case and all of the evidence presented. And the same is true about the concession that Mr. Fry makes regarding his ineffective assistance of counsel claim, that the details, the graphic details that Mr. Fry provided to Mr. Jaffe and the motive for the murder were all provided prior to the ruse occurring. Nobody likes to have any errors in a trial, but they do occur. And in this case, Mr. Fry received what he was entitled to, and that is a fair trial when looked at overall. And, Your Honor, there has been no reason to do anything but to affirm the district court's opinion. Okay. Any further questions? Any further questions? Thank you. Thank you, Your Honor. Well, nobody likes to have errors at a trial, that's true. But when the errors are made purposefully, not that I'm suggesting that they were made with some sort of malicious intent, but these errors did occur, and they did occur purposefully. This information did get in, it got in over the objections of the trial attorney, and so that's what I mean by purposefully. So I think that goes a long way to determine whether or not it was a fair trial. And the videotape alone was highly prejudicial, highly prejudicial, because when you show someone, a defendant, without the benefit of having to a jury in a videotape, as was done in this case, I think that that unfairly prejudices that jury and puts in their mind a vision of that defendant, when that defendant isn't even going to get up on the stand at trial. Thank you, counsel. The case, as heard, will be submitted. Thank you both for your audience. And now we will head to the last case on the calendar, Norman v. Clay.
judges: Wallace, Canby, Thomas